Rebuttal times to the deputy, that will suffice, you don't need to ask us again. Please call the first case. 155575, James Coitrone v. Brett Combs individually. Arguments not to exceed 15 minutes per side. Mr. Belsey for appellate. I get the pleasure of the court, your honor, counsel. The agreed upon facts in this case viewed from the perspective most favorable to the plaintiff showed that after a police chase of approximately 4 to 5 minutes, my client Mr. Coitrone was slowing to a stop because heavy traffic made any further flight impossible. At that point he was struck by the trooper who had been pursuing him from behind and that collision was either the result of an intentional decision by Trooper Combs to ram him in what's called a precision immobilization technique, a pit maneuver, or was the result of negligence, that being that Trooper Combs was following too closely in order to be able to stop before striking Mr. Coitrone. Isn't it also a fact that the record shows that he was coasting at the time, that he hadn't put his brakes on and therefore had no brake light operating? That is one interpretation, yes, your honor, that he had downshifted and not yet applied his brake. Well, didn't he testify to that? I think he did, your honor. All right, well then that's an undisputed fact, is it not? Correct. But, by the same token, although he was coasting to a stop, he was coming up to a line of cars on a two-lane road with heavy traffic from both directions because this collision occurred right by a large church on a Sunday morning. Was there foot traffic also? No, not really, your honor. There was a sidewalk in the direction he was pointed, I believe to the left side where there were some residences, but there was no real appreciable pedestrian traffic. Oh, he wasn't slowing down to avoid hitting somebody, is that? He was slowing down because he had to. There was no place left to go. He had two lanes, oncoming traffic, and traffic backed up from the light at Highland Way. And so he couldn't pass. He pulled into a car that was backed up, behind a car, that was backed up from the light and was slowing. You know, the negligence I see as a possibility, but this maneuver that you're talking about is not one that's normally done on a residential street of this nature. It's the kind of thing that happens out on the highway when there's no other way to stop a vehicle. Oh, I agree, your honor. I agree, but there is nonetheless evidence from which a jury can conclude that that's exactly what happened here. The officer estimated that when he struck Mr. Quattrone, he was doing 40 to 45 miles an hour. There were no skid marks at the scene, and Mr. Quattrone testified that just prior to the impact, he heard, or said that he heard, Officer Coombs' engine accelerating, or revving higher. So there is evidence to support the application of a pit maneuver, and for the purpose of drivers, assumed that. He assumed that Officer Coombs intentionally was applying a pit maneuver. Well, he did that because, as I understand the law, the law says that if this is an area where there is the risk of injury to people or damage to property, that maneuver is not illegal. It's not improper. Isn't that the reason the district court held that? Well, I think the reason that Judge Stivers assumed for the purpose of a ruling on our Fourth Amendment claim that Officer Coombs intentionally applied a pit maneuver was, number one, because there was evidence to support it, and number two, because under a Fourth Amendment claim, it has to be an intentional conduct by the law enforcement personnel. If it's merely negligent, that falls under Fourth Amendment due process, and we didn't plead due process. We went for negligence on that claim. So with regard to the Fourth Amendment claim, the judge had to look at it from an intentional act perspective. And we believe, as we argued in our briefs... He was assuming the worst. I'm sorry, sir? He was assuming the worst. Yes, yes. But yet still, there is evidence to support, again, that that act wasn't... Well, if he was assuming that, and he found that all the circumstances would support it, why did he not give you the relief you were asking for? I'm sorry, Your Honor. What the judge said was it was all right for him, even if Mr. Quattrone was slowing down, even if the traffic made any further flight impossible. So why didn't he rule that that was a violation of the Fourth Amendment? That was my question. Well, that's why we're here on appeal. I don't know why he didn't rule that way. Oh, he had to say something. Well, I think what he said... It wasn't a violation of the Fourth Amendment to do that. It is. He said it wasn't. That's why he didn't... That's... But we believe it is. And what judge... I understand you believe it is, but... I'm just asking what he said. That's what he said, isn't it? What the judge said was even if Mr. Quattrone was seeking to surrender at the very end, it did not negate his prior flight and the danger his actions posed to others. That was his reasoning. Our reasoning is at the point that he was slowing down, he no longer presented a risk of danger. Well, but he didn't... You have to look at it from the objective situation, right? Yes. I mean, you can't expect the police officer to read his mind. Correct. So he knows that there are some serious outstanding felony warrants, and he knows that he has has slowed before, but kept on going. And he knows that he's driving fairly recklessly. So he comes to the situation and everybody actually is thinking about calling it off, but he slows, but he doesn't know whether he's slowing because he's going to stop or he doesn't put up his hand like, I'm going to surrender. He doesn't send some sort of signal for all the officer knows he's slowing down because he has to. And as soon as he sees an opportunity, he's going to pull away again. So I mean, what's wrong with that analysis? What's wrong with that analysis, Your Honor, is in terms of an application of lethal force, and there's no question but that this pit maneuver, particularly when it comes to its use on a motorcycle, is the application of lethal force. The question is, is not what he might do, what might he do if I don't ram him? Question is, is at that moment, is he presenting a risk of harm to the safety, the well-being of the public, or the police officer who's pursuing him? Clearly, from the officer's perspective, he is at that point, right? You're just saying he took steps that are egregious in light of the fact, even in light of the fact that he was creating a risk. I mean, goodness, he's riding a motorcycle into a bunch of people after having led the police on a chase. Well your judge, in Walker v. Davis... Does your argument depend on the idea that he's not creating a risk to other people? That's exactly what we're saying, Your Honor. At the time... Well, it makes your argument tough. So you're saying that one minute, if he's going slowly, he's not a risk, but if he were to pick up again, then he would be a risk. So do they have to wait until they're in the middle of a chase? No Your Honor. The evidence, as I indicated, supported that he was coming, slowing to a stop because the traffic made any further flight impossible. Well, you know, we don't know that. I guess that may have been his... Was that his position? I mean, I've seen motorcycles go up on sidewalks. I've seen motorcycles go through the traffic, coming each way. He's on a motorcycle. He's not in a truck. Well, I understand, Your Honor, but that was our position. We believe that we presented evidence to support that position to the court below. Let's accept it as true that that was your client's intent, that he was going to stop. He didn't see a way out. How does the officer who's been following him know that by the time... That it's not the case that by the time he gets out of his car, let's say he stopped right behind him, and that by the time he gets out of his car and goes to the motorcycle, he will not have found an opportunity to pull out again? Well, that's a legitimate question, but that's not been a consideration of the courts in making rulings on application of lethal force. They haven't asked the question, well, what could happen? That was what Judge McKeague did in the Walker v. Davis case. I thought there was also a case called Scott, which I was trying to get you to. Scott v. Harris. The Supreme Court case? Yes, Your Honor. And that one would tend to indicate that what happened in this case, even if it was the worst case scenario, still wouldn't have been a violation of the Fourth Amendment. Your Honor, I disagree because in Scott v. Harris, the motorist was still in full flight. In fact, they were on an open road, as you indicated earlier, where these maneuvers are typically applied. They were on an open road, they were flat out, and that's when the officer attempted the pit maneuver that resulted in Mr. Harris' quadriplegia. So we don't think that that's applicable here. Well, I think your opposing counsel is going to argue that it is. And apparently the, I see, I'm just scanning this district court opinion now, it looks like the district court, citing Scott, thought that was the case. There's nothing in Scott that says it has to be an open road. I mean, that's normally where that maneuver, as you and I were agreeing, that's normally where the maneuver occurs. But if there's danger to the public or to property, why wouldn't it apply under these circumstances? There's no brake light on, let me remind you. Sure. And I understand, your Honor, but let me take it from the public danger perspective. At the point that Mr. Quattrone is slowing down, pulls into the driving lane, and is slowing down, there's no danger to the public. If he's intentionally rammed, and that motorcycle is kicked up into the air and goes through somebody's windshield. He was pulling into a driveway? No, he was pulling behind somebody in a line of cars that was backed up from the light. If he struck from behind, luckily he was ejected, the bike went down and spun across the street. But if that bike had popped up and gone through the windshield of an innocent bystander, we'd be having a whole entirely different argument here. You'd also have a different plaintiff, too. We would. But the court hasn't. I hear you're talking about the person you can talk about, maybe he violated some kind of constitutional or state law duty to third parties by risking them, but vis-a-vis this person who's been leading them on the chase, it's pretty hard to say that that person is entitled to say, well, you hurt me because you endangered other people. Well, Judge, that didn't make a difference to the Sixth Circuit in Walker v. Davis, and it didn't make a difference to the court in Kirby v. Duva. Your time is up. Thank you, Counsel. May it please the Court, Mr. Besley. My name is Jason Morgan, and I have the pleasure today of representing the Kentucky State Trooper Brett Coombs, who was following the appellant when this chase happened and the accident, of course, happened. We were trying to figure out how far it went on, and the best figure we could come up with in my office was five miles. Was there anything in the record about the length of the... That's approximately correct, Your Honor. There is some question as to how long the chase went. I can say this for the court and for the record, and it's really quite important, is the chase went on long enough that Trooper Coombs, who was actually in the dispatch of the KSP Post, Post 3 in Bowling Green, heard Trooper Mayfield call in for the warrants, the warrants on kidnapping, rape, sodomy, all of that came apart, and then Trooper Coombs leaves dispatch to intercede in the chase. So it is not a chase that was of any short duration, if you look at it from that perspective, because Trooper Coombs was able to leave the post, catch up to the chase, intercede and take over the chase. Just out of curiosity, were those warrants actually against this plaintiff? They were, absolutely. They were active warrants, and that's a very important issue, not only because of the danger that appellant created to the public under the objective reasonableness standard, as laid down by Graham and Connor, and certainly the entire case law on this issue, but he had created such a danger to other people for these various serious felonious crimes that he was charged with. So most of these cases, they look at the danger from the traffic offense, just from the fleeing. But in this case, we have these really serious crimes too, which makes it infinitely more important under the objective reasonableness standard to have apprehended the suspect. Now if we look at some of the questions your honors posed to appellant's counsel about, well, what about if Quattrone had stopped, what we're doing in this case then is the very thing that the courts have said, the Supreme Court has said in Scott v. Harris that we cannot do. We cannot go back from a 20-20 hindsight perspective, whether it's the judiciary or the counsel or the parties and say, well, what would I have done in that situation? What we have in this case and what we know from the record from the undisputed facts is that Quattrone was fleeing, and his flight had all sorts of felonies, class D felony for flight alone, one endangerment. But then let's look at the specific facts of the flight itself to look at appellant's argument that he actually was ceasing the flight. Well, he had a third party on the motorcycle. He pulled into a parking lot of a restaurant, drops that third party off in between barriers to blockade himself from the pursuing officer. That's indicia. He's not stopping his flight. He's running red lights. Again, indicia. He's not stopping his flight. When was the time that passed from the time he dropped her off to this incident? Your Honor, I don't have that specific information. I would say under five minutes, three to four minutes. Trooper Mayfield is who actually had the pursuit at first, and he picked up the third party that appellant dropped off. And then he takes this particular individual back to post. She actually sat in dispatch at KSP post three and heard the calls, if you will. And we've, of course, produced all the radio transmissions. So enough time, if you will, Your Honor, for Trooper Mayfield, then to go back to post three. So it was early on. That's correct. And then Trooper Coombs intercedes, takes over the pursuit. He blows through red lights. Lieutenant Clark blockades an intersection. He goes around, and Judge Daugherty, you asked that question. You said, I've seen motorcycles go up on the sidewalk. How was any KSP trooper to know? How was Trooper Coombs to know from an objective, reasonable standard that this appellant was going to stop his flight? He could not have known. There's no way to read his mind. Your client's position, though, is that he didn't intentionally stop him, is that correct? That's correct. So this is all kind of artificial from your perspective. I mean, you're defending something that you claim didn't even happen. That is correct. Trooper Coombs' testimony was it was an unintentional hit. And I think that is why the district court and Judge Stivers looked at the Fourth Circuit's case in Abney and said, OK, because the same factual dispute occurred in Abney. Abney was actually the case I was trying to remember. It factually is so analogous to this case that I think Judge Stivers wanted to look at that and not to in any way diminish this court's decision in Walker v. Davis, which is a very important case. Although incredibly factually in apposite to what happened in this case or Abney. But there was that dispute in Abney, whether the pit maneuver, whether the contact between the officer's vehicle and the fleeing motorcycle was intentional. And for purposes of the 1983 claim, starting with Saucier v. Katz and saying the question, the first question is, was there a constitutional violation? Was there excessive force? So let's assume that there was the evidence most favorable in the light of the plaintiff for summary judgment for appellant right. Let's assume it was intentional. If it was intentional, objective reasonableness. Was the force excessive? And when you apply that three-factor test and all of the very particular specific facts of this case, the force was not excessive, no constitutional violation. We don't even go to qualified immunity. But Judge Stiver's opinion, the district court's opinion is so exhausted, he goes to qualified immunity. He says, okay, well let's assume there was a constitutional violation. In the alternative, still summary judgment. He's just trying to help us out. That's correct. I think your honor. Putting it all out there for us. I understand. I agree. So either which way you look at it, whether it was intentional conduct or unintentional conduct, you have no 1983 claim. Summary judgment is appropriate. There is no error in that opinion. So what you have left then would be the state law claims, which your honor, Judge Daugherty, you had mentioned, well maybe we have a negligence claim. And that's not true either. And Judge Stiver's looked at that issue, district court looked at that issue and said, there can be no negligence claim when we're talking about battery. Was the force excessive? Was there an arrestable offense? Was there a good faith basis on the police officer? There is a negligence. These are alternative facts. On one reading of the facts, it's a battery. On the other, including in your reading, it was at best negligent. Well that's the problem. Then you have to go back to assuming the facts in the light most favorable to plaintiff. Plaintiff is the one testifying and saying for this record that it was intentional. You can plead in the alternative. I mean there are two different ways you can view the facts. That's correct. You can. You can. I mean, you can plead in the alternative, but then you have to look at the case law, whether it's Turner v. Hill, the various case law from Pennsylvania, Michigan that Judge Stiver's looked to, that does not afford a duty of ordinary care, if you will, to the fleeing, to the fleeing pursuant. If that's an issue that hasn't been decided, why shouldn't it have gone back, once the judge got rid of the 1983 claims, why shouldn't it have gone back to state court? Well Judge Stiver's, one, has supplemental jurisdiction over the pendent state court claims and he did decide it in his summary judgment opinion. He found that there can be no negligence when there's a battery claim. Okay. Well, let's assume that's wrong. That's fair. Then there can be no negligence if no duty of ordinary care is owed and there is no duty. And has the state court, I'm sorry, has the state court addressed that question? The state court hasn't. That comes out of a case of the Western District of Turner v. Hill. Although the Western District in the Walker case did that analysis, although when it came up to this court on appeal, it was on interlocutory on the qualified immunity and the 1983 claim, not the state court claims. Can it be the state law of Kentucky that when you have the right to arrest somebody and use force in doing so, that the force doesn't have to be reasonable? No, because then you go back to the battery. You can only use that much force, which is necessary to effectuate the arrest. But if you look at the negligence. But it's not a battery, you're saying, if you have the power to arrest him, right? You have the power to use force that would be a battery if you didn't have the authority to arrest him, right? Yeah, I think what you're arguing. If you have the authority to arrest him, you say then there's no more duty. And I'm questioning that because I can't believe it's the law of Kentucky that you just have no duty not to use force that would cause harm that you don't need to use. So if you can arrest somebody, that doesn't mean you can beat them over the head with a baseball bat. Even though it's not a battery to arrest him, at some level it becomes too much. That's the nature of their argument. You can argue it wasn't too much here, that makes perfect sense. But to say it could never be too much seems a strange argument. I think it could. And if you look like in the Scott v. Harris cases and you look at some of the analogies where they say... I'm talking about state law. I understand. I'm talking about battery and negligence. I just wanted to analogize some facts. For instance, let's say in the pursuit they're firing out the window a gun, right? That's patently, I think, would be unreasonable, right, in pursuing someone. But if you look at... So you do owe a duty not to shoot him when you're arresting him. Correct. Not to use that excessive force. We're not talking about a duty, we're just talking about the scope of the duty then. But when you're looking at the negligence claim, you know, and if you look at the case of Latham v. Jones, if you look at the ministerial versus discretionary case law in Kentucky, and even the case that Appellant cites to try to save his negligence claim, it always talks about the injury to the innocent third party. All the cases... I'm not asking you about injury to him. Let's assume there's no third parties around and you execute some kind of maneuver which you have the right to do, which might mean grabbing him by the arm. You might be able to grab him by the arm or you might be able to pull out in front of him. There's all these things you might be able to do which would cause contact to him, which you're privileged to do under Kentucky law, but still owe a duty not to do more than you have to do. So you can't, you know, use a fire torch or something. That's correct. You can't hit him on the head with a baseball. So you have a duty not to use unreasonable force, whether it's part of the...whether it's a qualification of the privilege to the battery or whether it's an independent negligence. It doesn't really matter too much what you call it. You've got a duty not to do too much to this very person that you have to arrest. Wouldn't you agree with that? I would agree only in the context of using excessive force. It's hard for me to concede the duty... Well, okay. Why isn't this just like using excessive force under their theory? Intentional conduct versus negligent conduct, because the battery in itself is intentional conduct. And if you look at what the court said, that the battery is incongruent, the intentional versus the intentional conduct. That logic doesn't cohere though, because it would allow things that clearly you're agreeing would not be allowed. I think the slippery slope then, Your Honor, would be every pursuing, every pursui, every police officer for any claim that says during the attempted seizure... The question is whether you can recover. That's right. Whether it's a valid claim that you can recover. But I think that creates the slippery slope. You can't recover if it's reasonable, and it's much more likely to be reasonable to use force when someone's engaged in the kind of conduct that this person was engaged in. So all kinds of things are going to be reasonable that would not be reasonable if you're just arresting some little old man who shoplifted or something. I think so. So what's reasonable is something that you ought to be able to allege and recover on if, for instance, you beat up the little old man who was shoplifting. Well, I would respectfully disagree only to the extent that... Do you think there's no duty to that man? Not at the point... Only to the people next to him. Not at the point in time of this particular factual, particularized factual situation. Let me give Your Honor an example. Let's say the accident had not occurred. Let's say that an appellant actually stopped, okay? Coombs gets out of the vehicle. He puts the handcuffs on him. Is there a duty at that point when he puts him in the back of the car? You talked about a duty before that. I would... A duty before you even touch him, not to drop an A-bomb on him. I mean, it's just this clear. I think I have to respectfully disagree that there is no duty at that point. You can just torch him. I'm really confused by what you're saying. I mean, he's driving away. Let's assume he's doing it recklessly and you know that there are these warrants out. You can't catch up. Can you shoot him in the back? No. That would be... Why not? It would be excessive force under 1983. And that's the Tennessee v. Garber case. We're talking about tort law now. We're talking about tort law. We're talking about state tort law. Would that be a violation of tort... You're saying that would not be tortious under Kentucky tort law. I would say that I would turn to the battery claim and I would say under state tort law, he would be culpable of excessive force under the state tort of battery, not negligence. He would use excessive force in battery. That's correct. Not negligence, because that would be intentional conduct. The difference is still whether the force is reasonable or not, isn't it? I'm sorry, Your Honor? It's still whether the force is reasonable or not. It would be... Flipping over the statute of limitations or something? I mean, he wins if it's unreasonable and he loses if it's reasonable. Let's say he's yelling, stop or I'll shoot, and by a mistake he shoots. He didn't mean to. And then I would again say from an excessive force standpoint, it's battery. He has an arrestable fence and a good faith belief that there is an arrestable fence. And that exact factual scenario was in Tom and V. Elizabeth, where the approaching officer sticks a gun into the car window and shoots the passenger. Okay, let's say he stops, okay? He's off his bike. He turns around, he goes like this, and the officer was too busy talking to his partner and he didn't see it, and he rams right into him. I think I have to simply, and I notice that I'm out of time and I certainly want to answer your question, Your Honor, that at the end of the day, you have to look to the balancing test. What's your answer? Can there be, why can't that be a negligence claim? Because it falls under battery. It's not a negligence claim. Let's assume we disagree with you on that. So every time you get into a car accident, it's a battery? Under the ministerial aspect of emergency driving, there is no immunity and that negligence claim can happen. But what we're talking about is the high speed pursuit in this case, which is discretionary from beginning. Okay, but we're not. Because what we're talking about is the officer who claims that I was following this guy and he stopped too fast in front of me and I ended up hitting his wheel. That's what we're talking about right now, under that scenario. That's correct, Your Honor. And I think at the end of the day, you have to look at, you know, who placed this chain of events into... But that's a question of whether he's negligent or not. You're saying there can be no such claim or do I misunderstand you? You don't misunderstand me. I'm saying that there is no duty and the district court... What if there is a duty? Do you still, do you lose them? If there is a duty, there's a negligence claim. If there is a duty... If there's a duty, he's negligent? Under the negligence standard. If there is a duty of ordinary care at all, there would be a negligence claim. And would that survive? I don't think so under these particularized facts. Absolutely not. So you'd say there is, you'd say, okay, I concede there's a negligence claim, but you look at reasonable care and there's no claim under these facts. I think you look at the totality of the circumstances and in this case, Judge Stivers appropriately looked at various cases that said there is no duty owed to the fleeing felon for negligence. It would be resolved under battery. So your time has expired. Thank you. Your Honors, with regard to the no-duty cases on which Judge Stivers relied, all of those cases involved instances in which the plaintiff was injured, the injury was self-inflicted. In one case, a car went off the road fleeing from the police. Another one, a motorcyclist went down. These were all self-inflicted injuries. And as I pointed out in our brief, in a number of those cases, the courts pointed out specifically these were not injuries that were caused by any action of the police other than pursuing this individual, which they were entitled to do. Abney, Your Honor, is close, but we believe it's distinguishable because the motorcyclist in Abney, like the individual in Scott v. Harris, was still in full flight, wide open, still running. So the conduct that my counsel discussed Mr. Quattrone had engaged in was remarkably similar to that that the plaintiff in the Walker v. Davis case had engaged in. Ran a red light, 60 miles an hour, except there was one big difference. My guy was no longer fleeing. In Walker, he was still fleeing. He was in an open field where there was no risk to anybody. But that brings us, that's correct, Your Honor, but that brings us back to the question. He wasn't wanted for a bunch of pretty serious crimes. Well, but again, it gets back, the court doesn't consider at that point the warrants that are out on him. The consideration is what threat is he representing to the officer or to the general public? In Walker, they said he's in a muddy field, too far away to pose any threat. Even though Judge McKeague said if you let him go, he was going to get back on the road at some point. In this case, we show that our man's slowing down and that the heavy traffic made any further flight impossible. Lastly, 20-20 hindsight. This isn't 20-20 hindsight. As we argued in our brief, it's interesting. We believe that the Kentucky State Police itself has policies that prohibit this very thing. Do they bind the court applying 1983? Your Honor, they don't. But the important thing is... You're still talking about 1983 right now, right? I'm talking about 1983, Your Honor, and they don't bind the court. But what I think is the important point is... How's that interesting? Well, let me just say, the courts are broadening the discretion of police in pursuits while at the same time, law enforcement agencies are reining it in. And we think this court has done the right thing in Walker v. Davis and that that decision controls here. So what should that officer have done? Just waited to see what happened? He didn't have to wait to see what happened. The man had stopped. He pulls up. He stops behind him. He gets out of his car. And the guy takes off. He puts a gun on him and arrests him. Well, and maybe he does, Your Honor. And maybe Walker gets back on the road if he's not run down in the muddy field. Well, of course, I'm going to state the opposite when I say that all your client had to do was stop about four miles back and none of this would have happened. I'm not here to justify what he did. Okay. And why shouldn't the Kentucky courts decide whether there's a duty to a fleeing felon? Well, I don't disagree with Your Honor. I think Judge Stiver's got it wrong. I don't think that any of those cases apply. And I think a court ruling that an officer pursuing a suspect has no duty under any circumstances not to run him down is very dangerous. Did the judge say there is no negligence because it's a battery claim? And even if there were, there's no duty? Or did he just say there's no negligence here because we're talking about battery? What he said, Your Honor, is he didn't think there was a negligence claim. He thought it was a battery claim. But even if there was a negligence claim, we couldn't recover because there was no duty. Thank you, Your Honors.